UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kirsten E.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, <br> *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No. 22-cv-992 (DJF) <br><br> **ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kirsten E. ("Plaintiff") seeks judicial review of a final decision ("Decision") by the Commissioner of Social Security ("Commissioner") that denied her application for disability insurance benefits ("DIB") ("Decision"). This matter is presented for decision by the parties' cross motions for summary judgment.[2] Finding that substantial evidence on the record as a whole supports the Decision, the Court grants the Commissioner's motion for summary judgment (ECF No. 15), denies Plaintiff's motion for summary judgment (ECF No. 9), and affirms the Commissioner's Decision.

## BACKGROUND

Plaintiff applied for DIB on May 20, 2019. (Soc. Sec. Admin. R. (hereinafter "R.") 69.)[3] At that time she was a 31-year-old woman, who previously worked as a health unit coordinator, a

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

[3] The Social Security administrative record (R.) is filed at ECF No. 8. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

histology technician, a stable attendant, and a sales associate. (R. 23.) Plaintiff alleges she became disabled on May 20, 2019 (R. 90)[4], resulting from type 1 diabetes mellitus with ophthalmic complication, hypothyroidism, recurrent major depressive disorder, attention deficit disorder ("ADD")/ attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, seasonal affective disorder, migraine headaches, panic disorder, rheumatoid arthritis involving multiple sites, and Raynaud's disease (R. 231).

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If

---

[4] Plaintiff initially identified the alleged onset date of her disability as June 16, 2019. (*See* R. 70, 226.) She appears to have changed the alleged onset date at or before the reconsideration level. (*See* R. 90.) The ALJ references the May 20, 2019 alleged onset date in his Decision (R. 10), and Plaintiff references the same date in the memorandum supporting her motion for summary judgment (ECF No. 10 at 1).

she is not, the claimant must then establish that she has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[5] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

The Commissioner denied Plaintiff's application for DIB initially (R. 114) and on reconsideration (R. 126). On March 16, 2021, at Plaintiff's request (R. 130), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application. Plaintiff, who was represented by an attorney, and a vocational expert ("VE") testified at the hearing. (*Id.* at 34-68.) After the hearing, the ALJ determined that Plaintiff had multiple impairments, which at least in combination were severe: type 1 diabetes mellitus; seropositive non-erosive rheumatoid arthritis; myofascial pain syndrome; Raynaud's phenomenon; major depressive disorder; persistent depressive disorder;

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

generalized anxiety disorder; panic disorder; and attention deficit hyperactivity disorder (ADHD), combined type. (R. 13.) The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any impairment in the Listing. (R. 13-16.) He then determined that:

> [Plaintiff] has the [RFC] to perform less than a full range of light work as defined in 20 CFR 404.1567(b). She is able to lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can engage in push/pull actions (operation of bilateral hand controls) twenty pounds resistance occasionally and ten pounds resistance frequently. She can sit (with normal breaks) for a total of about six hours in an eight-hour workday and stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday. The claimant can frequently handle, finger and feel with the bilateral hands; however, she is never able to operate vibrating hand tools with the bilateral hands. He [sic] can occasionally climb ramps and stairs, balance, stoop, kneel and crouch and never climb ladders or scaffolds, crawl or work at unprotected heights or work with dangerous moving mechanical parts. The claimant is able to tolerate up to occasional exposure to extreme cold, extreme heat and humidity/wetness. From a mental standpoint, the claimant retains the ability to understand, remember and carry out detailed but not complex instructions, and make detailed work-related decisions. She is able to sustain concentration, persistence and pace for a period of two hours at a time before and after the fifteen-minute morning and afternoon breaks and the thirty-minute lunch breaks for such level of instructions. She can interact with supervisors and coworkers up to an occasional basis but should not have any customer service interaction with the public. She is able to work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict timeline. The claimant is able to work in low stress jobs (defined as one that requires only occasional work-related decisions and involves only occasional changes in the work setting).

(R. 16.) After thoroughly cataloging the mental and physical health evidence in the record, the ALJ determined that, though Plaintiff was unable to return to her previous employment, there were jobs Plaintiff could perform in the national economy. (R. 16-23.) The ALJ thus concluded that Plaintiff was not disabled. (R. 24.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-4), and this lawsuit followed.

## DISCUSSION

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228

4

F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Plaintiff raises several challenges to the ALJ's determination in three broad areas.

**A.    Severity of Plaintiff's Mental Impairments**

Plaintiff first contends the ALJ "mangled the determination" that Plaintiff's mental impairments did not meet or equal an impairment in the Listing because he failed to properly consider Plaintiff's treating psychiatrist's opinion and did not rely on objective psychological testing results. (ECF No. 10 at 3-6.) Plaintiff further argues the ALJ erred by failing to include a medical expert at her March 16, 2021 hearing. (*Id.* at 12-13.)

To evaluate a claimant's mental impairments, an ALJ must assess four areas to determine how mental disorders limit functioning in a work setting: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A.2.b. An extreme limitation is the inability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. pt. 404, subpt. P, app. 1, § F.2.e. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. *Id.* § F.2.d.

After weighing the evidence, the ALJ determined that none of Plaintiff's mental impairments resulted in one extreme limitation, or two marked limitations, in the four broad areas of functioning so as to automatically trigger a disability finding.

The ALJ found Plaintiff had only a mild limitation in understanding, remembering or applying information. (R. 14.) The Social Security Administration ("SSA") defines this function area as the ability to learn, recall, and use information to perform work activities. 20 C.F.R. Part 404, Subpart P, Appendix E.1. The ALJ cited record evidence that Plaintiff: (1) could follow written instructions, but had trouble remembering spoken instructions (R. 265); (2) may need to read written instructions multiple times (R. 293); (3) sometimes needed reminders to take her medications or used an alarm (R. 262); (4) could handle a savings account and use a checkbook, which the ALJ found reflected an ability to learn, recall, and use information (R. 263); and (5) demonstrated a good memory during examinations (R. 411-433).

The ALJ also found Plaintiff had only a mild limitation in adapting or managing herself. (R. 15.) The SSA defines this function area as the ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. Part 404, Subpart P, Appendix E.4. The ALJ noted Plaintiff reported in April 2019 that her mental health impairments did not significantly impede to her ability to care for herself (R. 261), but in December 2019 she reported she rarely showered and normally wore sweats at home (R. 288). The ALJ further noted Plaintiff did not mention these issues during her hearing and also cited conflicting medical records. (*See, e.g.*, 398, 400, 403, 405, 430, 528, medical notes that Plaintiff appeared to be well groomed.) The ALJ also cited Plaintiff's self-reports that, while she could not tolerate stress well, she could handle changes in routine and was able to perform some limited part-time work. (R. 260, 266, 294.) Finally, the ALJ cited medical records indicating Plaintiff's insight and judgment were intact. (*See* R. 398,

400, 403, 405, 528.)

The ALJ found Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. (R. 15.) The SSA defines this function area as the ability to focus attention on work activities and stay on task at a sustained rate. 20 C.F.R. Part 404, Subpart P, Appendix E.3. The ALJ cited Plaintiff's self-reports that she had trouble completing tasks and maintaining concentration (R. 265, 293), could only pay attention for up to forty minutes at a time if taking her medication (R. 293), did not finish tasks she started (R. 293), and needed encouragement to complete chores (R. 290). But the ALJ also noted Plaintiff's conflicting self-reports, in which stated she spent her time reading, playing computer games, watching television, journaling, doing puzzles, or doing arts and crafts (R. 264, 292), which the ALJ observed required some degree of sustained attention and concentration. (R. 15.) The ALJ further remarked that Plaintiff's ability to perform part-time work before the COVID-19 pandemic supported a finding that she was not markedly limited in this area. (R. 15.) Finally, the ALJ cited medical records stating Plaintiff's attention and concentration improved with medication. (R. 15, citing, *e.g.*, 398, 400, 403, 528, 531, 912.)

The ALJ also found Plaintiff had a moderate limitation in interacting with others. (R. 14.) The SSA defines interacting with others as the ability "to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Part 404, Subpart P, Appendix E.2. The ALJ noted Plaintiff's self-reports that she: (1) was isolated and seldom spent time with others (R. 264-265, 292), but did sometimes connect with a friend (R. 264); (2) had problems getting along with her sisters (R. 55, 265); (3) got along well with authority figures (R. 266, 294); (4) had some interaction with coworkers and a supervisor during her part-time work at a hospital, and sometimes did not get along with coworkers (R. 55). The ALJ also cited record evidence that Plaintiff traveled out of

7

state to visit family or friends and was pleasant and cooperative at examinations. (*See, e.g.*, R. 340, 460, 430, 441, 446, 490, 499, 517, medical notes that Plaintiff was pleasant and cooperative; 404, medical note that Plaintiff intended to travel to visit family.)

Plaintiff's treating psychiatrist, Dr. John M. Schmitz, opined that Plaintiff met the criteria for Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorder). (R. 944.) A claimant meets the criteria for Listings 12.04 and 12.06 only if she has an extreme limitation in one, or a marked limitation in two of the four function areas. *Id.* §§ 12.04, 12.06. Dr. Schmitz opined that Plaintiff had "marked restriction of activities of daily living, marked difficulties of maintaining social functioning, and marked difficulties of maintaining concentration, persistence, and pace." (R. 944.) Dr. Schmitz further opined that despite numerous treatment interventions, Plaintiff continued to experience persistent, severe depressive symptomatology and persistent symptoms of anxiety and ADHD. (R. 944.) Additionally, in November 2020, Plaintiff completed psychological testing that showed deficits in areas including social responsiveness, comfort around others, concentration, and independence. (R. 907-913.) Plaintiff argues the ALJ incorrectly discounted this evidence and "took random comments" from elsewhere in the record to wrongly conclude her mental impairments were less severe than they are. (ECF No. 10 at 6.)

The ALJ considered Dr. Schmitz's opinion but found it unpersuasive, both because Dr. Schmitz relied on an out-of-date Listing of Impairments, and because his opinion was not consistent with or supported by the record as whole. (R. 16.) The ALJ specifically referenced record evidence conflicting with Dr. Schmitz's opinion, including medical notes describing Plaintiff as well-groomed, cooperative, and pleasant; and that Plaintiff's concentration improved with medication. (R. 16, citing R. 396-408, 525-532.)

Under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources.  20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a), "treating physicians are [no longer] entitled to special deference").  When evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider: (1) whether they are supported by objective medical evidence; (2) whether they are consistent with other medical sources; (3) the relationship the source has with the claimant; (4) the source's specialization; and (5) any other relevant factors.  *Bowers*, 40 F.4th at 875 (citing 20 C.F.R. § 404.1520c(c)).  The first two factors—supportability and consistency—are the most important, and the ALJ generally need only explain how she considered those two factors.  20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2).

The Court finds the ALJ properly evaluated Dr. Schmitz's medical opinion under 20 C.F.R. § 404.1520c.  Under the revised guidelines, the ALJ did not owe Dr. Schmitz's medical opinion any deference.  The ALJ cited evidence contradicting Dr. Schmitz's opinion, clearly explaining how he found it inconsistent with and not supported by the record as a whole.  Plaintiff argues the ALJ wrongly discounted Dr. Schmitz's opinion for using an out-of-date Listing of Impairments (ECF No. 10 at 3), but the same evidence in the medical notes contradicts Dr. Schmitz's opinion, regardless of whether Dr. Schmitz cited the correct version of the Listing.  Plaintiff also argues, somewhat confusingly, that the ALJ failed to evaluate her anxiety in his Decision.  She states, "The fact that the Decision did not evaluate her anxiety when her treating psychiatrist says she experiences anxiety as a predominant disturbance is not a fair reading of the claim file."  (ECF No. 10 at 6.)  But Plaintiff's criticism of the ALJ's decision is misplaced.  The ALJ determined Plaintiff's anxiety was a severe impairment (R. 13), evaluated whether she met Listing 12.06 for

9

anxiety and obsessive-compulsive disorders (R. 14), and directly addressed Plaintiff's reports of anxiety and related medical records in his discussion of her RFC (R. 18, 20).

That Plaintiff disagrees with the how the ALJ weighed the evidence regarding the severity of her mental impairments does not alter the fact that the ALJ properly evaluated Dr. Schmitz's medical opinion. *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). Further, to the extent Plaintiff argues the ALJ overlooked certain evidence, including Plaintiff's November 2020 psychological testing, the Eighth Circuit has clearly explained that the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision. *Perks*, 687 F.3d at 1091; *see also Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) ("If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). Here, the ALJ clearly supported his determination regarding the severity of Plaintiff's mental impairments with substantial evidence, so the Court affirms his findings.

Finally, that a medical expert was not present at Plaintiff's March 16, 2021 hearing does not alter the Court's conclusion. While it is true that an ALJ has the responsibility to "develop the record fairly and fully, independent of the claimant's burden to press his case," *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007), an ALJ is not required to have a medical expert attend a hearing.

*See* SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017) (stating that "adjudicators at the hearings level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s)") (emphasis added); *see also Brandon O. v. Kijakazi*, Civ. No. 20-2397 (JFD), 2022 WL 834515, at *6 (D. Minn. March 21, 2022) (dismissing plaintiff's argument that an ALJ erred by failing to include a medical expert at plaintiff's hearing). The ALJ therefore did not neglect his duty to develop the record fairly and fully by exercising his discretion not to invite a medical expert to Plaintiff's hearing.

**B.     Plaintiff's RFC**

Plaintiff next argues the ALJ's RFC finding is not based on substantial evidence. (ECF No. 10 at 6-9.) Plaintiff contends that because she wears compression gloves on both hands to relieve symptoms related to her Raynaud's disease and rheumatoid arthritis, the ALJ should have further restricted her ability to handle, finger and feel. (*Id.* at 7-8.) Plaintiff also argues her RFC "contains no mention" of her anxiety or severe depression, as reported by Dr. Schmitz. (*Id.* at 8.)

It is the claimant's burden to prove her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). "Because a claimant's RFC is a medical question, an ALJ's assessment must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Moreover, the "ALJ is not limited to considering medical evidence, but

11


is required to consider at least some supporting evidence from a professional." *Baldwin*, 349 F.3d at 556. The ALJ must determine the claimant's RFC based on all of the relevant medical and non-medical evidence. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); 20 C.F.R. § 404.1545(a)(3). An ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

As stated above, the ALJ did consider Plaintiff's anxiety and depression in his discussion related to her RFC. The ALJ noted that Plaintiff was "depressed and anxious, per the medical record" and "appeared to struggle handling stress." (R. 20.) But the ALJ also noted Plaintiff's mental status examinations, which showed she was fully oriented, polite, cooperative, and pleasant, with intact insight and judgment, and that her concentration improved with medication; but did *not* show significant findings in terms of social difficulties. (R. 20, 22, citing, *e.g.*, R. 398, 400, 403, 405, 408, 528, 531, 819-826, 828, 830-845.) The ALJ also reiterated that he did not find Dr. Schmitz's opinion persuasive because it conflicted with Dr. Schmitz's own mental status examinations and the fact that Plaintiff was able to maintain a part-time job during the time when she allegedly was disabled. Based on this evidence, the ALJ included a number of mental restrictions in Plaintiff's RFC but determined she would still be able to perform some limited work activity within those limitations. (R. 20.)

The ALJ also discussed Plaintiff's Raynaud's disease and highlighted Plaintiff's testimony that she wore decompression gloves to help her symptoms. (R. 20, citing R. 437, 556, 931.) The ALJ further observed that the State agency medical consultants did not suggest any handling, fingering, or feeling limitation (R. 21, citing R. 81, 105) and noted Plaintiff's range of motion in her wrists was normal (R. 21, citing 466, 517). Based on his review of the record as a whole, the

ALJ limited Plaintiff to frequent fingering, handling and feeling. (R. 16.)

While Plaintiff may disagree with how the ALJ weighed the evidence as to her RFC, the ALJ properly reviewed the record and supported his findings with substantial evidence. "It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." *Cox*, 495 F.3d at 617 (internal citations omitted). Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court must affirm it.

C.     **The VE's Testimony**

Plaintiff's final challenges to the ALJ's Decision relate to the VE's testimony during her March 16 hearing. (ECF No. 10 at 8-10, 14.) Based on a hypothetical question that set forth Plaintiff's limitations in a manner consistent with the ALJ's eventual RFC determination, the VE testified that Plaintiff could perform work such as office helper (DOT 239.567-010—56,000 jobs nationally), cleaner/housekeeper (DOT 323.687—014555,000 jobs nationally), and clothing presser (DOT 363.684-018—30,000 jobs nationally). (R. 63-65.) The VE further testified that her responses were consistent with the Dictionary of Titles ("DOT") and Selected Characteristics of Occupations ("SCO"). (R. 65.)

Plaintiff first contends the VE's testimony about her ability to perform work does not constitute substantial evidence because the hypothetical question the ALJ asked the VE did not include all the limitations Plaintiff advocates for. (*Id.* at 8- 9, 14.) But "[a]n ALJ must include 'only those impairments and limitations he found to be supported by the evidence as a whole in his hypothetical to the vocational expert.'" *Nash*, 907 F.3d at 1090 (quoting *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011)). As discussed above, the record does not compel a finding that Plaintiff was more limited than the ALJ's already restrictive RFC. The ALJ appropriately included

13

in the hypothetical he posed to the VE only those limitations he found to be supported by the evidence as a whole. Thus, the VE's testimony does constitute substantial evidence on which the ALJ appropriately relied.

Plaintiff next argues the ALJ failed to resolve an apparent conflict between the job of clothing presser and his hypothetical restriction limiting Plaintiff to only occasional exposure to extreme heat. (ECF No. 10 at 9-10.) Plaintiff argues both the DOT and common sense dictate that a clothing presser would be exposed to extreme heat more than just occasionally. (*Id.* at 10.) She contends that because the VE erred with respect to the clothing presser job, "the accuracy of the other jobs" the VE listed is also questionable, such that there is not substantial evidence to support the ALJ's finding that Plaintiff can perform work that exists in significant numbers in the national economy (R. 15).

Even if Plaintiff cannot perform work as a clothing presser, the Court does not find the error warrants remand because two of the three jobs on which the ALJ relied remain unchallenged. "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." *See Swedberg v. Saul*, 991 F.3d 902, 906 (8th Cir. 2021) (quoting *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) ("Although the vocational expert recommended the job of flat work finisher despite Grable's inability to perform such work, one mistaken recommendation does not devalue the rest of her opinion."). Plaintiff does little more than speculate that the VE's testimony related to Plaintiff's ability to perform work as an office helper or cleaner/housekeeper may be inaccurate, without presenting any actual argument or evidence to the contrary.

Combined, the remaining two positions constitute 611,000 jobs in the national economy. "Work exists in the national economy when there is a significant number of jobs (in one or more

occupations) having requirements which [the claimant is] able to meet." 20 C.F.R. § 404.1566(b). The Eighth Circuit has found that job numbers less than these have constituted significant numbers in the national economy. *See, e.g.*, *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (finding 36,000 jobs constituted a significant number). The Court therefore finds substantial evidence supports the ALJ's finding that Plaintiff could perform work that existed in significant numbers in the national economy despite her limitations. (Tr. 23-24.)

## CONCLUSION

For the foregoing reasons, the Court finds substantial evidence in the record as a whole supports the Commissioner's Decision. The Court accordingly grants the Commissioner's motion for summary judgment (ECF No. 15), denies Plaintiff's motion for summary judgment (ECF No. 9), and affirms the Commissioner's Decision.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Commissioner's Motion for Summary Judgment (ECF No. [15]) is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment (ECF No. [9]) is **DENIED**;

3. The Commissioner's Decision is **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINLY**.

Dated: August 18, 2023      *s/ Dulce J. Foster*
                             DULCE J. FOSTER
                             United States Magistrate Judge